UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSSETTE STEWART, individually and on behalf of all other persons similarly situated who were employed by LOVE TENDER CARE HOME CARE LLC and/or any other entities affiliated with or controlled by LOVE TENDER CARE HOME CARE LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>LOVE TENDER CARE HOME CARE LLC, and any related entities, and NICOLE P. RICHARDSON,<br><br>Defendants. | **COMPLAINT**<br><br>**FLSA COLLECTIVE ACTION**<br><br>And<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Named Plaintiff JOSSETTE STEWART ("Named Plaintiff"), by her attorneys, Virginia and Ambinder, LLP, alleges upon knowledge to herself and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); and the Connecticut Minimum Wage Act (the "CMWA"), Conn. Gen. Stat. § 31-58 *et seq.*, and Conn. Gen. Stat. § 31-72 to recover unpaid wages including unpaid regular wages, minimum wages, and overtime compensation as well as related damages owed to the Named Plaintiff and all similarly situated persons (the "Putative Class" or "Putative Class Members") (Named Plaintiff and the Putative Class referred to together as "Plaintiffs") who are presently or were formerly employed by LOVE TENDER CARE HOME CARE LLC, and any related entities, ("Love Tender") and/or NICOLE P. RICHARDSON ("Defendant Richardson") (Defendant Richardson together with Love Tender, "Defendants") to perform work as home health attendants, home health aides, personal care assistants and/or other related tasks.

2. Beginning in February 2022 and continuing through the present, Defendants have engaged in a policy and practice of depriving their employees of their earned wages, including minimum and overtime wages, for work they performed as mandated by federal and state law.

3. Named Plaintiff has initiated this action seeking for herself, and on behalf of all similarly situated employees, all compensation, including unpaid regular wages, minimum wages, and overtime compensation, of which they were deprived, plus interest, damages, and attorneys' fees and costs.

## JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under CMWA.

5. Upon information and belief, Defendants' gross annual dollar volume of sales made, or business done exceeds $500,000.

6. The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations is three (3) years.

7. The statute of limitations under Conn. Gen. Stat. § 52-596 is two years.

## VENUE

8. Venue for this action in the District of Connecticut under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants reside in the District of Connecticut.

## THE PARTIES

9. Named Plaintiff Jossette Stewart is currently a resident of Hartford County, Connecticut, and was employed by Defendants as a home health aide from approximately April 2024 until

approximately May 2024. Named Plaintiff performed work for Defendant's clients in Connecticut including but not limited to in Stratford in Fairfield County, Connecticut.

10. Upon information and belief, Defendant Love Tender Care Home Care LLC is a domestic corporation organized and existing under the laws of the State of Connecticut and authorized to do business within the State of Connecticut, with a principal place of business at 157 Church Street, New Haven, CT, 06510.

11. Upon information and belief, Defendant Nicole Richardson resides at 1340 Washington Blvd., Unit 308, Stamford, CT 06902 and/or 60 Connolly Parkway, Suite 101 Building11A, New Haven, CT, 06514, and is/or at all relevant times was, an officer, director, president, vice president, and/or owner of Love Tender Care Home Care LLC.

12. In her capacity as the agent of Defendant Love Tender, Defendant Richardson maintains an agent address at 5658 Goffe Terrace, New Haven, CT 06511.

13. At all times relevant to this action, Defendants were the employer and joint employer of Named Plaintiff and the putative class.

14. Upon information and belief, Defendants maintained common control, oversight, and direction over the operations of the work performed by Named Plaintiff and the Putative Class, including payroll practices.

15. Defendants possessed the ultimate authority and control to set the hours of employment and wages paid for Named Plaintiff and the Putative Class.

16. Upon information and belief, Defendants had substantial control of the working conditions of Named Plaintiff and the putative class and over the unlawful policies and practices alleged herein.

17. Upon information and belief, Named Plaintiff and the Putative Class performed labor for the benefit of and at the direction of Defendants.

18. Upon information and belief, Defendants were responsible for the firing and hiring of Named Plaintiff and the Putative Class, and controlled the terms and conditions of their employment including their rates of pay, schedules, promotions, discipline, and raises.

## CLASS ALLEGATIONS

19. Named Plaintiff realleges and incorporates by reference all the allegations set forth above.

20. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure (FRCP).

21. This action is brought on behalf of Named Plaintiff and the Putative Class consisting of similarly situated employees who worked for Defendants as home health attendants, home health aides, personal care assistants and/or performed other related tasks.

22. Named Plaintiff and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendants' common policy and/or plan to violate the FLSA and/or CMWA by failing to pay Named Plaintiff and those similarly situated earned but unpaid regular wages, minimum wages, and overtime compensation.

23. The Putative Class is so numerous that joinder of all members is impracticable. The size of the Putative Class is believed to be in excess of 40. Additionally, the names of all potential Putative Class Members are not known.

24. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include but are not limited to, whether Defendants engaged in a pattern and practice of: (1) failing to pay the regular wages and

minimum wage for all hours worked; (2) failing to pay overtime compensation for all hours worked in excess of 40 in any given week; (3) failing to keep contemporaneous, true and accurate records of all hours worked by Named Plaintiff and Putative Class Members; and (4) failing to ensure Named Plaintiff and Putative Class Members received appropriate sleeping accommodations when they performed 24-hour shifts.

25. The claims of the Named Plaintiff are typical of the claims of the Putative Class Members because they are all current or former home health care employees of Defendants who sustained damages, including underpayment of wages as a result of Defendants' common compensation policies and practices. The defenses that Defendants are likely to assert against the Named Plaintiff's claims are typical of the defenses that Defendants are likely to assert against the Putative Class Members.

26. Named Plaintiff and Putative Class Members were all subject to Defendants' policies and willful practice of failing to pay all wages owed, including minimum wages and overtime compensation.

27. Upon information and belief, Defendants had substantial control of the working conditions for Named Plaintiff and Putative Class Members and over the unlawful policies and practices alleged herein.

28. Upon information and belief, Named Plaintiff and Putative Class Members performed labor for the benefit of and at the direction of Defendants.

29. Upon information and belief, Defendants were responsible for the firing and hiring of Named Plaintiff and Putative Class Members, and controlled the terms and conditions of their employment including their rate of pay, schedule, promotions, discipline, and raises.

30. Named Plaintiff and her counsel will fairly and adequately protect the interests of the Putative Class.

31. Named Plaintiff has retained counsel experienced in complex wage and hour collective and class-action litigation.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. The individual Named Plaintiff and Putative Class Members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants' policies.

## FACTS

34. The Named Plaintiff repeats each and every allegation previously made and as if set forth fully herein.

35. Named Plaintiff worked as a home health aide for Defendants from approximately April 2024 to May 2024.

36. Named Plaintiff was interviewed by and hired directly by Defendant Richardson.

37. Defendant Richardson set Named Plaintiff's rate of pay.

38. Defendant Richardson set Named Plaintiff's schedule.

39. While employed by Defendants, Named Plaintiff provided services to ailing and elderly clients, including but not limited to, personal care services, such as assistance with dressing, bathing and personal grooming, cooking, feeding and serving food, changing diapers and toileting, cleaning, such as mopping, cleaning bathrooms, changing bed linens, and taking out garbage, escorting clients to doctors' appointments, and making transportation arrangements.

40. While employed by Defendants, Named Plaintiff typically worked five (5) to seven (7) 12-hour shifts per week from approximately 9:00 a.m. until 9:00 p.m. However, Named Plaintiff often had to work later than 9:00 p.m., until approximately 10:00 p.m. to 11:00 p.m. in order to wait for another home health aide to arrive.

41. Named Plaintiff worked 24-hour, "live-in" shifts for Defendants on approximately five (5) to six (6) occasions.

42. Defendants informed Named Plaintiff that she would be paid between $15.00 to $20.00 per hour for her work.

43. However, Defendants entirely failed to pay Named Plaintiff any amount of money for almost any of her work.

44. Though Named Plaintiff worked approximately 32 shifts for Defendants, Defendants only paid Named Plaintiff for 2 (two) shifts.

45. In the entre time Named Plaintiff worked for Defendants, she received a total of $400 in cash from Defendants.

46. Named Plaintiff was paid in cash only.

47. Though Named Plaintiff worked well in excess of forty (40) hours per week for Defendants, she was never paid overtime at the rate of one and one-half times her regular rate of pay for all overtime hours worked.

48. Named Plaintiff was not paid at her regular rate of pay, or at the minimum wage rate, for all hours that she worked.

49. When Named Plaintiff worked the five (5) to six (6) 24-hour shifts for Defendants, she did so based upon a schedule set and dictated by Defendants.

50. When Named Plaintiff worked 24-hour shifts, she was required to stay overnight at the

residences of Defendants' clients and needed to be ready and available to provide assistance to Defendants' clients at all times.

51. Defendants required Named Plaintiff to be on the premises of Defendants' clients for 24 hours during any given 24-hour shift, which was for the benefit of Defendants.

52. When Named Plaintiff worked 24-hour shifts for Defendants, she was generally not permitted to leave the client's residence during her shift.

53. Named Plaintiff maintained her own residence and did not "live" in the homes of Defendants' clients or in the home of her employer, nor was she an "exempt companion" of the Defendants' clients.

54. Defendants failed to ensure that Named Plaintiff was paid for every hour that she worked, including for the hours that she worked during 24-hour shifts.

55. Named Plaintiff was not paid at all for the work she performed on her 24-hour shifts.

56. Defendants failed to establish, maintain and preserve contemporaneous, true and accurate records that reflect: (1) all hours worked by Named Plaintiff on a daily and weekly basis; (2) the times of all regularly scheduled work-free uninterrupted periods that Named Plaintiff was able to sleep and eat during her 24-hour shifts; and (3) records of appropriate sleeping facilities provided to Named Plaintiff when she worked 24-hour shifts.

57. Because Defendants' clients were often elderly and suffering from various health ailments, they required constant care and Named Plaintiff did not receive regularly scheduled work-free uninterrupted periods to sleep for five or more hours when she worked 24-hour shifts.

58. Named Plaintiff did not receive regularly scheduled work-free uninterrupted meal breaks of one-hour each for three meals per day when she worked 24-hour shifts.

59. Named Plaintiff was forced to eat her meals while feeding Defendants' clients or attempt to eat between her duties, because Defendants' clients needed feeding assistance during traditional mealtimes and constant supervision.

60. Accordingly, Named Plaintiff was not paid all wages owed, including at her regular rate of pay or even at the minimum wage rate, for every hour that she worked.

61. Defendants also failed to ensure that Named Plaintiff was provided with adequate sleeping accommodations when she worked 24-hour shifts.

62. Despite regularly working more than forty hours per week, Named Plaintiff was not paid overtime compensation at the rate of one and one-half times her regular hourly rate for all hours worked over forty (40) in a week.

63. Named Plaintiff's co-workers performed the same/and or similar work to that of the Named Plaintiff.

64. Like Named Plaintiff, throughout their employment, putative class members worked shifts of varying lengths, including but not limited to 12-hour shifts and 24-hour shifts, based upon schedules set and dictated by Defendants.

65. Like Named Plaintiff, the putative class members did not "live" in the homes of Defendants' clients, nor were they "exempt companions."

66. Like Named Plaintiff, Defendants required the putative class members to be on the premises of Defendants' clients' residences for 24 hours during any given 24-hour shift, which was for the benefit of Defendants.

67. Like Named Plaintiff, when putative class members worked 24-hour shifts, Defendants failed to ensure that they were paid for every hour that they worked.

68. At all relevant times, Defendants have maintained a practice and policy of systematically

failing to pay putative class members for all hours worked in a 24-hour shift without ensuring that they received regularly scheduled, work-free uninterrupted periods to sleep and eat, as required by law.

69. Defendants failed to establish, maintain and preserve contemporaneous, true and accurate records that reflect: (1) all hours worked by putative class members on a daily and weekly basis; (2) the times of all regularly scheduled work-free uninterrupted periods that putative class members were able to sleep and eat during 24-hour shifts; and (3) records of appropriate sleeping facilities provided to putative class members when they worked 24-hour shifts.

70. Because Defendants' clients were often elderly and suffering from various health ailments, they required constant care and putative class members did not receive regularly scheduled work-free uninterrupted periods to sleep for five or more hours when they worked 24-hour shifts.

71. Like Named Plaintiff, putative class members did not receive regularly scheduled work-free uninterrupted meal breaks of one-hour each for three meals per day during their 24-hour shifts.

72. Putative class members were forced to eat their meals while feeding Defendants' clients or attempt to eat between their duties, because Defendants' clients needed feeding assistance during traditional mealtimes and constant supervision.

73. Defendants knew, should have known, or had reason to know, that Named Plaintiff and putative class members were working throughout their entire shift, including during meal and sleep breaks.

74. Defendants permitted or pressured Named Plaintiff and putative class members to work through their meal and sleep breaks without compensation.

75. Despite Defendants' actual or constructive knowledge that Named Plaintiff and putative class members were working through their meal and sleep breaks, Defendants took no affirmative

steps to prevent the performance of such work and/or to track the hours Named Plaintiff and putative class members actually worked.

76.

77. Upon information and belief, Defendants failed to establish, maintain, and preserve contemporaneous, true, and accurate records for Named Plaintiff and putative class members that accurately reflect, *inter alia*: (1) all hours worked by Named Plaintiff and putative class members on a daily and weekly basis; (2) Named Plaintiff and putative class members' time of arrival and departure from the homes of Defendants' clients; (3) the times of all regularly scheduled work-free uninterrupted periods that Named Plaintiff and putative class members were able to sleep and eat during 24-hour shifts; and (4) records of appropriate sleeping facilities provided to Named Plaintiff and putative class members.

78. Like Named Plaintiff, when putative class members worked 24-hour shifts, Defendants failed to ensure that they received appropriate sleeping facilities.

79. Like Named Plaintiff, Defendants failed to pay putative class members for all hours worked.

80. Like Named Plaintiff, Defendants failed to pay putative class members at their regular rate of pay, or even a minimum wage rate of pay, for all hours worked, including for 24-hour shifts.

81. Like Named Plaintiff, the putative class members generally worked more than 40 hours per week, but were not paid the applicable overtime hourly rate for all hours worked in excess of 40 per week.

82. At all relevant times, Defendants have maintained a practice and policy of assigning Plaintiffs to work more than 40 hours per week without paying them the applicable overtime hourly rate of pay for all hours worked in excess of 40 per week.

83. At all relevant times, Defendants maintained a policy and practice of not paying Named Plaintiff and the Putative Class for all hours they actually worked, including at their regular rate of pay or minimum wage rate.

84. Upon information and belief, Defendant Richardson set the pay rate for putative class members.

85. Upon information and belief, Defendant Richardson set the schedules for putative class members.

86. Upon information and belied, Defendant Richardson had the authority to hire, fire, promote, and/or demote Named Plaintiff and putative class members.

87. Upon information and belief, Defendants willfully, purposefully, and maliciously paid Named Plaintiff and the Putative Class Members less than the rates of wages and benefits to which Named Plaintiff and Putative Class Members were entitled.

88. Defendants' actions as described herein were intentional and not made in good faith.

## FIRST CAUSE OF ACTION
## UNPAID OVERTIME COMPENSATION UNDER FLSA

89. Named Plaintiff repeats each and every allegation previously made and as if set forth fully herein.

90. Named Plaintiff and similarly situated employees of Defendants bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

91. Under the FLSA, Named Plaintiff and similarly situated employees are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

92. Even though Named Plaintiff and similarly situated employees are entitled to be paid overtime rates for hours exceeding 40 per week, Defendants failed and continues to fail to pay

Named Plaintiff and those similarly situated at the appropriate rate of pay, including overtime rates for work in excess of 40 hours per week, as required under the FLSA.

93. Defendants willfully, knowingly, purposefully, maliciously, and recklessly failed to pay Named Plaintiff and similarly situated hourly employees overtime compensation.

94. Defendants' failure to comply with the FLSA wage-and-hour protections caused the Named Plaintiff and Putative Class Members to suffer loss of wages and interest thereon.

95. On this claim for relief, the Named Plaintiff on behalf of herself and Putative Class Members seeks the payment of all unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and Putative Class Members

96. Named Plaintiff on behalf of herself and Putative Class Members further seeks an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

## SECOND CAUSE OF ACTION
## UNPAID OVERTIME UNDER THE CMWA

97. The Named Plaintiff repeats each and every allegation previously made here and as if set forth fully herein.

98. Named Plaintiff and similarly situated employees are entitled to be paid at an overtime rate of one and one-half times the regular hourly rate for all hours worked over 40 in any given week.

99. Even though Named Plaintiff and similarly situated employees are entitled to be paid overtime rates for hours exceeding 40 per week, Defendants failed and continue to fail to pay Named Plaintiff and those similarly situated at the appropriate rate of pay, including overtime rates for work in excess of 40 hours per week, as required under Conn. Gen. Stats. §§ 31-58 et seq.,

including Conn. Gen. Stats. §§ 31-60, 31-66, 31-68, 31-76(a) – (c), and their implementing regulations.

100. Defendants' failure to comply with Connecticut wage-and-hour protections caused the Named Plaintiff and Putative Class Members to suffer loss of wages and interest thereon.

101. Defendants willfully, knowingly, purposefully, maliciously, and recklessly failed to pay Named Plaintiff and similarly situated hourly employees overtime compensation.

102. On this claim for relief, the Named Plaintiff on behalf of herself and other similarly situated hourly employees of Defendants seek the payment of all unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and other similarly situated employees.

103. Named Plaintiff on behalf of herself and Putative Class Members further seeks an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the by the CMWA and related wage-and-hour protections and regulations.

## THIRD CAUSE OF ACTION
## UNPAID WAGES PURSUANT TO CONN.GEN.STAT. § 31-72

104. The Named Plaintiff repeats each and every allegation previously made here and as if set forth fully herein.

105. Connecticut law requires Defendants to pay employees at least the Connecticut minimum wage or higher regular hourly rate for all hours worked. Conn. Gen. Stat. § 31-71a et seq.

106. Section 31-71b(a)(1) of the Connecticut General Statutes obliges employers to "pay weekly, or once every two weeks, all wages, salary, or other compensation due each employee."

107. "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, . . . such employee . . . shall recover, in a civil action, (1) twice the

full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat. § 31-72.

108. An employer thus has an obligation to pay all wages due on a weekly or bi-weekly basis pursuant to Conn. Gen. Stat. § 31-71b, the violation of which is actionable under Conn. Gen. Stat. § 31-72.

109. Defendants did not pay Named Plaintiff and Putative Class Members all wages due on a weekly or bi-weekly basis in violation of Conn. Gen. Stat. § 31-71b.

110. Defendants' failure to comply with Connecticut wage-and-hour protections caused the Named Plaintiff and Putative Class Members to suffer loss of wages and interest thereon.

111. Defendants willfully, knowingly, purposefully, maliciously, and recklessly failed to pay Named Plaintiff and similarly situated hourly employees all wages owed, including at their regular rate of pay for all hours worked up to forty hours per week.

112. On this claim for relief, the Named Plaintiff on behalf of herself and other similarly situated hourly employees of Defendants seeks the payment of all unpaid wages, including those owed at their regular hourly rate, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and other similarly situated employees.

113. Named Plaintiff on behalf of herself and Putative Class Members further seeks an award of liquidated damages in the amount of 100% of the unpaid wages, plus attorneys' fees, interest,

and costs as provided for by the by the CMWA and related wage-and-hour protections and regulations.

## FOURTH CAUSE OF ACTION
## <u>UNPAID MINIMUM WAGES UNDER THE FLSA</u>

114. Named Plaintiff repeats each and every allegation previously made and as if set forth fully herein.

115. Named Plaintiff and similarly situated employees of Defendants bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

116. Under the FLSA, Named Plaintiff and similarly situated employees are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the minimum wage provisions of sections 206 of the FLSA.

117. Even though Named Plaintiff and similarly situated employees are entitled to be paid at least the minimum wage rate for all hours worked, Defendants failed and continue to fail to pay Named Plaintiff and those similarly situated at the appropriate rate of pay, including at least minimum wage rates for all hours worked per week, as required under the FLSA.

118. Defendants willfully, knowingly, purposefully, maliciously, and recklessly failed to pay Named Plaintiff and similarly situated hourly employees at least the minimum wage rate.

119. Defendants' failure to comply with the FLSA wage-and-hour protections caused the Named Plaintiff and Putative Class Members to suffer loss of wages and interest thereon.

120. On this claim for relief, the Named Plaintiff on behalf of herself and Putative Class Members seeks the payment of all unpaid minimum wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and Putative Class Members

121. Named Plaintiff on behalf of herself and Putative Class Members further seeks an award of liquidated damages in the amount of 100% of the minimum wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

### FIFTH CAUSE OF ACTION
### UNPAID MINIMUM WAGES UNDER THE CMWA

122. Named Plaintiff repeats each and every allegation previously made here and as if set forth fully herein.

123. Named Plaintiff and the Putative Class Members are entitled to be paid at the applicable minimum wage rate under the CMWA pursuant to Conn. Gen. Stat. §§ 31-58(i)(1), 31-68, 31-72.

124. Pursuant to CMWA and Conn. Gen. Stat. §§ 31-58(i)(1), the basic minimum hourly wage rate in Connecticut is $15.69 per hour on and after January 1, 2024, and $16.39 per hour on and after January 1, 2025.

125. Defendants failed to pay Named Plaintiff and other members of the putative class minimum wages for all hours worked, in violation of the CMWA.

126. Additionally, due to Defendants' policy and practice of not paying Named Plaintiff and Putative Class Members wages for all hours worked, Named Plaintiff's and Putative Class Members' hourly wage rates fell below the minimum wage rate when they worked 24-hour shifts in violation of the CMWA.

127. Defendants' failure to comply with Connecticut wage-and-hour protections caused the Named Plaintiff and Putative Class Members to suffer loss of wages and interest thereon.

128. Defendants willfully, knowingly, purposefully, maliciously, and recklessly failed to pay Named Plaintiff and the Putative Class Members at least the minimum wage rate for all non-overtime hours worked.

129. On this claim for relief, the Named Plaintiff on behalf of herself and other similarly situated hourly employees of Defendants seeks the payment of all unpaid minimum wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and other similarly situated employees.

130. Named Plaintiff on behalf of herself and Putative Class Members further seeks an award of liquidated damages in the amount of 100% of the unpaid minimum wages, plus attorneys' fees, interest, and costs as provided for by the by the CMWA and related wage-and-hour protections and regulations.

## **JURY TRIAL DEMANDED**

131. Plaintiffs demand that all issues of fact be decided by a jury.

**WHEREFORE**, Named Plaintiff, individually and on behalf of all other persons similarly situated who were employed by Defendants, demand judgment:

(1)     On the First Cause of Action against Defendants, all unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the FLSA and related wage-and-hour protections and regulations;

(2)     On the Second Cause of Action against Defendants, all unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the unpaid overtime wages, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the CMWA and related wage-and-hour protections and regulations;

(3)     On the Third Cause of Action against Defendants, all unpaid wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the unpaid wages, plus

liquidated damages, interest, attorneys' fees and costs, pursuant to the CMWA and related wage-and-hour protections and regulations;

(4) On the Fourth Cause of Action against Defendants, all unpaid minimum wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the unpaid minimum wages, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the FLSA and related wage-and-hour protections and regulations;

(5) On the Fifth Cause of Action against Defendants, all unpaid minimum wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the unpaid minimum wages, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the CMWA and related wage-and-hour protections and regulations; and

(6) such other and further relief as this Court may deem just and proper.

Dated: February 27, 2025

**VIRGINIA & AMBINDER, LLP**

By: /s/ Alanna R. Sakovits
Alanna R. Sakovits, Esq. (Bar No. ct31786)
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
Fax: (212) 943-9082
asakovits@vandallp.com

*Attorneys for Named Plaintiff and*
*The Putative Class*