**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOSSETTE STEWART,

*Plaintiff*,

v.

No. 3:25-cv-00289-MPS

LOVE TENDER CARE HOME CARE LLC et al,

*Defendants.*

## RULING ON MOTION FOR DEFAULT JUDGMENT

Plaintiff Jossette Stewart ("Stewart") brings this action against Love Tender Care Home Care LLC and any related entities ("Love Tender") and Nicole P. Richardson ("Richardson," and collectively with Love Tender, the "Defendants") for violations of the Fair Labor Standards Act and the Connecticut Minimum Wage Act. Stewart now moves for default judgment seeking to collect unpaid regular and overtime wages, liquidated damages, prejudgment interest, and attorneys' fees and costs. ECF No. 18-8 at 29. For the reasons set forth below, the motion is granted.

## I.    BACKGROUND

### A.  Factual Background

The following facts, which I accept as true as a result of the entry of default, are taken from Stewart's complaint. ECF No. 1. I set forth only those facts necessary to decide the motion.

Stewart worked as a home health aide for Defendants from approximately April 2024 to May 2024. *Id.* ¶ 35. Stewart provided services to Defendants' ailing and elderly clients, including personal care services, such as assistance with dressing, bathing and personal grooming, cooking, feeding and serving food, changing diapers and toileting, cleaning, and escorting clients to doctors' appointments. *Id.* ¶ 39.

1

Stewart was interviewed by and hired directly by Richardson, who set Stewart's rate of pay and schedule. *Id.* ¶¶ 36–38. Defendants informed Stewart that she would be paid between $15.00 to $20.00 per hour for her work. *Id.* ¶ 42. Stewart worked approximately 32 shifts for Defendants. *Id.* ¶ 44. However, in the entire time that she worked for Defendants, they paid her only $400 in cash. *Id.* ¶¶ 45–46.

While employed by Defendants, Stewart typically worked five to seven 12-hour shifts per week from approximately 9:00 a.m. until 9:00 p.m. *Id.* ¶ 40. However, she often had to work later than 9:00 p.m., until approximately 10:00 p.m. to 11:00 p.m., to wait for another home health aide to arrive. *Id.* Stewart also worked 24-hour "live-in" shifts for Defendants on approximately five to six occasions. *Id.* ¶ 41.

When Stewart worked the 24-hour "live-in" shifts for Defendants, her schedule was set and dictated by Defendants. *Id.* ¶ 49. During these shifts, Stewart was required to stay overnight at the residences of Defendants' clients and needed to be ready and available to assist Defendants' clients at all times; Defendants generally did not permit Stewart to leave the premises. *Id.* ¶¶ 50–52. Because Defendants' clients were often elderly and suffering from various health ailments, they required constant care. *Id.* ¶ 57. Stewart did not receive regularly scheduled work-free uninterrupted periods to sleep or for meal breaks and was forced to eat her meals while feeding Defendants' clients or attempt to eat between her duties, because Defendants' clients needed feeding assistance during traditional mealtimes and constant supervision. *Id.* ¶¶ 57–59. Defendants also failed to ensure that Stewart was provided with adequate sleeping accommodations when she worked 24-hour shifts.  *Id.* ¶ 61. Stewart maintained her own residence and did not "live" in the homes of Defendants' clients or in the home of her employer, nor was she an "exempt companion" of the Defendants' clients. *Id.* ¶ 53.

Defendants failed to establish, maintain and preserve contemporaneous, true and accurate records that reflect: (1) all hours worked by Stewart on a daily and weekly basis; (2) the times of all regularly scheduled work-free uninterrupted periods that Stewart was able to sleep and eat during her 24-hour shifts; and (3) records of appropriate sleeping facilities provided to Stewart when she worked 24-hour shifts. *Id.* ¶ 56.

### B.  Procedural Background

On February 27, 2025, Stewart filed the complaint in this action. ECF No. 1. The complaint asserts causes of action for unpaid overtime and unpaid minimum wages under the Fair Labor Standards Act ("FLSA") and unpaid overtime, unpaid wages, and unpaid minimum wages under the Connecticut Minimum Wage Act ("CMWA"). *Id.* at 12–17. Stewart's complaint seeks unpaid wages; unpaid minimum wages; unpaid overtime wages; liquidated damages; interest; and attorneys' fees and costs. *Id.* at 18–19.

Stewart served Defendants with copies of the complaint and summons and filed proof of service on the docket. ECF No. 10. Defendants failed to appear or respond to the complaint, and Stewart moved for entry of default, ECF No. 16, which the Clerk granted and entered. ECF No. 17.

Stewart then filed the present motion for default judgment, ECF No. 18, which seeks regular wages owed under the CMWA; liquidated damages under the CMWA for unpaid regular wages; overtime compensation; liquidated damages under the CMWA for unpaid overtime compensation; prejudgment interest under the CMWA at 12% per year; and reasonable attorneys' fees and costs. ECF No. 18-8 at 29.[1]

---

[1] Stewart filed her complaint on behalf of herself and all similarly situated employees as a FLSA Collective Action and Class Action. ECF No. 1 at 1. She filed the motion for default judgment on behalf of only herself. ECF No. 18-8 at 8 ("This motion for default judgment is respectfully submitted on behalf of

## II.    LEGAL STANDARD

Upon entry of a default, the court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). But although "a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action." *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000). It, therefore, "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Id.*; *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true.").

---

Plaintiff Jossette Stewart"). Where a plaintiff's complaint asserts both individual and class claims, but no class or collective action has been certified, and the motion for default judgment asserts only individual claims, courts consider the collective/class claims waived and decide the motion for default judgment only as to the individual plaintiff. *See Singh v. Meadow Hill Mobile Inc.*, 2021 WL 4312673, at *1 n.1 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted,* 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021) ("The Complaint includes collective action and class action allegations, but counsel neither sought certification of this matter as a collective action, nor provided evidence in support of damages claims for anyone other than the named plaintiffs. Thus, the Court deems any collective or class action claims to have been waived."); *see also Galicia v. 63-68 Diner Corp.*, 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Plaintiff originally sought designation of this action as a collective action pursuant to 29 U.S.C. § 216(b). Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiff's collective action request waived."). Here, Stewart has not moved for certification under either § 216(b) of the FLSA or Fed. R. Civ. P. 23, and no employees or former employees of Defendants have joined this action as opt-in plaintiffs. Accordingly, Stewart's requests for collective and class action are waived and the Court's decision regarding default judgment applies only to Plaintiff Stewart. *See Bautista v. ABC Corp*, 2021 WL 1225872, at *2 n.1 (S.D.N.Y. Apr. 1, 2021) ("Plaintiff has asserted only individual claims in his motion for default judgment. Furthermore, no class has been certified in this action and no joinders have been filed. The request for collective action is therefore waived because Plaintiff failed to reiterate his request in the motion for default judgment. Accordingly, the Court's decision applies only to Plaintiff Bautista.") (internal citations omitted).

### III.    DISCUSSION

Upon review of the record, I find that default judgment is warranted. Service was proper, and Stewart has sufficiently established liability for her FLSA and CMWA causes of action. She has also established that she is entitled to the damages discussed below with reasonable certainty.

#### A.  Service

"A plaintiff must effectuate valid service of process before the district court can assert personal jurisdiction over a defendant." *Nature's First Inc. v. Nature's First L., Inc.*, 436 F. Supp. 2d 368, 372 (D. Conn. 2006). Therefore, I must determine whether Stewart has established service of process on both Love Tender and Richardson to proceed.

Federal Rule of Civil Procedure 4 governs service of process and provides that individuals and corporations may be served by following state law. Fed. R. Civ. P. 4(e)(1) ("[A]n individual . . . may be served in a judicial district of the United States by: following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); Fed. R. Civ. P. 4(h)(1)(A) (corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual"). "Rule 4(e)(1) and (h)(1) 'together provide that service of process on a domestic entity may be made as authorized by the law of either the state in which the district court sits or in which service is effected.'" *Callahan v. iCare Health Network,* 2023 WL 2988889, at *3 (D. Conn. Apr. 18, 2023).

Here, Richardson was served by leaving a copy of the summons and complaint at her usual place of abode in Stamford, Connecticut. ECF No. 10 at 1; *see also* ECF No. 1 ¶ 11 ("Defendant Nicole Richardson resides at 1340 Washington Blvd., Unit 308, Stamford, CT 06902…"). This is a proper means of service on an individual under Connecticut law. Conn. Gen. Stat. § 52-57(a) ("Except as otherwise provided, process in any civil action shall be served by leaving a true and

attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state.").

Love Tender was served by leaving a copy of the summons and complaint at Richardson's usual place of abode in Stamford, Connecticut. ECF No. 10 at 1. Because Richardson is Love Tender's agent for service, *id.*; ECF No. 1 ¶ 12 ("In her capacity as the agent of Defendant Love Tender, Defendant Richardson maintains an agent address at…"), this is a proper means of service on an LLC under Connecticut law. Conn. Gen. Stat. § 34-243r(a) ("A limited liability company…may be served with any process…by…leaving a true and attested copy with such company's registered agent, or at his or her usual place of abode in this state").

Accordingly, I find service adequate under Connecticut law and the Federal Rules as to both Richardson and Love Tender.

## B. <u>Liability</u>

"In determining whether to issue a default judgment, the court must ensure that the plaintiff's factual allegations establish liability as a matter of law." *Bricklayers*, 779 F.3d at 187. Here, Stewart has alleged, and I accept as true for the purposes of this motion, sufficient facts to establish liability against Defendants for her FLSA and CMWA claims.

### 1.  *FLSA Claims*

The FLSA requires covered employers to "pay all employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2015) (citing 29 U.S.C. §§ 206–07). To recover under the FLSA, a plaintiff must show (1) that she is an "employee" of the defendant within the meaning of the FLSA and (2) that either the employer or the employee is engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a)(1), 207(a)(1). "The

two [commerce requirement] categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." *Jacobs v. New York Foundling Hosp*., 577 F.3d 93, 96 (2d Cir. 2009).

First, I find that Stewart was an "employee" of Defendants. Under the FLSA, an "employee" is "any individual employed by an employer," and an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203. The Second Circuit uses the following four-factor "economic reality" test to determine whether an employment relationship exists: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). Stewart has alleged that Defendants had the power to hire and fire her, supervised and controlled her work schedule and conditions of employment, and determined the rate and method of her pay. ECF No. 1 ¶¶ 14–18, 36–38, 42, 49–52. Stewart's allegations satisfy three of the four *Carter* factors, and the fourth forms part of the basis for her FLSA claim itself. *Id.* ¶ 56. Therefore, Defendants were Stewart's employers. *See Bi v. Xia*, 2023 WL 4684828, at *6 (D. Conn. July 21, 2023) (finding that defendant was employer under the FLSA when plaintiff's "allegations satisfy three of the four *Carter* factors, and the fourth forms part of the basis for [plaintiff's] FLSA claim"); *see also Fermin v. Las Delicias Peruanas Rest., Inc*., 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) ("The fact that Individual Defendants did not keep employment records does not undermine this finding because no employment records were kept").

Second, I find that Defendants were engaged in commerce under the FLSA. A business is subject to "enterprise" coverage when it "(i) has employees engaged in commerce or in the production of goods for commerce, or … *has employees handling, selling, or otherwise working*

*on goods or materials that have been moved in or produced for commerce* by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A) (emphasis added). As to the second prong, Stewart has alleged that Defendants do over $500,000 in business per year. ECF No. 1 ¶ 5. As to the first, Stewart has alleged that the services she provided to Defendants' clients included "personal care services, such as assistance with dressing, bathing and personal grooming, cooking, feeding and serving food, changing diapers and toileting, cleaning, such as mopping, cleaning bathrooms, changing bed linens, and taking out garbage, escorting clients to doctors' appointments, and making transportation arrangements." *Id.* ¶ 39. It is reasonable to infer that these services required her to handle goods and materials that had been moved in or were produced for commerce, such as personal care, food, and cleaning products; household goods; cell phones; and vehicles. *See Fandunseva v. Home Attendant Vendor Agency, Inc.*, 2018 WL 1796274, at *2 (E.D.N.Y. Jan. 4, 2018) ("Ordinarily, allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences. Here, it is reasonable to infer that Plaintiff engaged in interstate commerce by using a variety of materials moved or produced in other states to provide various household services.") (internal citations omitted); *accord Hernandez v. Little K's Landscaping, LLC*, 2024 WL 3857494, at *5 (D. Conn. Aug. 19, 2024), *recommended ruling adopted in full*, No. 3:23-CV-00460 (SVN), ECF No. 51 (D. Conn. Sep. 16, 2024) ("Enterprise coverage has been interpreted broadly by the courts . . . virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal quotation marks and citations omitted). Therefore, I find that Stewart has sufficiently alleged that the Defendants are subject to enterprise coverage under the FLSA.

Having found that the FLSA applies here, I next examine whether Stewart's complaint alleges that Defendants are liable for violating the FLSA. "An employee who sues for unpaid minimum wages or overtime compensation has the burden of proving that the employer did not compensate him for completed work." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003). In the absence of employer records, *see* 29 U.S.C. § 211(c), and "where the employer has defaulted … the employees' recollection and estimate of hours worked are presumed to be correct." *Hernandez v. Little K's Landscaping, LLC*, 2024 WL 1121321, at *7 (D. Conn. Feb. 5, 2024), *recommended ruling adopted in all respects except "recalculat[ing] unpaid wages slightly,"* No. 3:23-CV-00460 (SVN), ECF No. 27 (D. Conn. March 8, 2024). Although a FLSA plaintiff need not "keep careful records and plead their hours with mathematical precision," at least "some factual context" is necessary to "nudge [a plaintiff's FLSA] claim 'from conceivable to plausible.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Stewart's first FLSA claim is for unpaid overtime. ECF No. 1 at 12. The FLSA requires employees to be compensated "at a rate of not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). "In order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Stewart has sufficiently alleged that she worked over 40 hours a week and that such overtime was not compensated: she typically worked between five and seven 12-hour shifts per week and often had to stay late. ECF No. 1 ¶ 40. This allegation alone establishes that she worked at least 60 hours most weeks, and some weeks worked over 84 hours. Stewart alleges that in the entire time that she worked for Defendants, they paid her a total of $400 and she was never paid overtime. *Id.* ¶¶ 45–

47. Accordingly, I find Defendants liable to Stewart for failing to pay her overtime compensation in violation of 29 U.S.C. § 207(a)(1).

Stewart's second FLSA claim is for unpaid minimum wages. ECF No. 1 at 16. The FLSA requires employers to pay their employees at least the federal minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Here, Stewart has sufficiently alleged that she was not paid at least the federal minimum wage for all hours she worked. Stewart worked approximately 32 shifts for Defendants. ECF No. 1 ¶ 44. Approximately 5 or 6 of these shifts were 24 hours each, and the rest were at least 12 hours each. *Id.* ¶¶ 40–41, 44. Therefore, at minimum, Stewart worked 444 hours for Defendants (5x24 + 27x12 = 444). For all her work, Stewart was only paid $400. *Id.* ¶ 45. This amounts to less than $1 per hour worked. Accordingly, I find Defendants liable to Stewart for failing to pay her minimum wages in violation of 29 U.S.C. § 206(a)(1)(C).

> 2. *CMWA Claims*

The "Connecticut Minimum Wage Act ("CMWA"), provides wage and overtime guarantees similar to the FLSA," *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 263 n.2 (D. Conn. 2002), and likewise requires employers to pay a minimum wage and time and a half for overtime. Conn. Gen. Stat. §§ 31-58, 31-60, 31-76c. The CMWA also requires employers to pay employees all wages due weekly or biweekly. Conn. Gen. Stat. § 31-71b(a)(1). The CMWA employs a somewhat different definition of "employer" than the FLSA. Under the CMWA, an employer is "any owner or any person [or] . . . limited liability company. . . acting directly as, or on behalf of, or in the interest of an employer in relation to employees." Conn. Gen. Stat. § 31-58(d). The Connecticut Supreme Court has held that the term "employer" for purposes of the CMWA "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech., Inst., In*c., 243 Conn. 454, 462

(Conn. 1997); *see, e.g., Tahirou v. New Horizon Enterprises, LLC*, 2023 WL 2613506, at *6–8 (D. Conn. 2023) (applying this definition of "employer" to CMWA claim). "An individual personally can be liable as an employer" under the CMWA, "notwithstanding the fact that a corporation is also an employer of the claimant." *Butler*, 243 Conn. at 463. Stewart alleges that Richardson set her rate of pay and hours, ECF No. 1 ¶¶ 37–38, and that Richardson and Love Tender were her employers. *Id.* ¶ 35, 39–42, 49–51. I conclude that Defendants satisfy the CMWA's definition of "employer."

Stewart's first CMWA claim is for unpaid overtime. ECF No. 1 at 13. The CMWA requires employers to pay employees working more than 40 hours a week one and one-half times their regular rate of pay for hours in excess of 40 hours. Conn. Gen. Stat. § 31-76c. For the same reasons that I determined Defendants to be liable for violating the FLSA's overtime wage provision, I conclude that Defendants are liable for violating the CMWA's overtime wage provision. *Id.*

Stewart's second CMWA claim is for unpaid wages. ECF No. 1 at 14. Employers in Connecticut must "pay weekly, or once every two weeks, all wages, salary, or other compensation due each employee." Conn. Gen. Stat. § 31-71b(a)(1). The CMWA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3). Stewart's wages were "between $15.00 to $20.00 per hour for her work." ECF No. 1 ¶ 42. I found above that Stewart worked, at minimum, 444 hours for Defendants. Defendants paid her only $400 for all her work. *Id.* ¶ 45. This amounts to less than $1 per hour worked. Therefore, I conclude that Defendants are liable for violating the CMWA's payment of wages provision. Conn. Gen. Stat. § 31-71b(a)(1).

Stewart's third CMWA claim is for unpaid minimum wages. ECF No. 1 at 17. Employers in Connecticut violate the CMWA when they pay less than minimum wages. Conn. Gen. Stat. § 31-60. Stewart alleged that she worked for Defendants from April 2024 to May 2024. ECF No. 1 ¶ 35. Connecticut's minimum wage was $15.69 per hour at all times relevant to this case. Conn. Dep't of Labor, *Wage and Workplace Standards*, https://portal.ct.gov/dol/divisions/wage-and-workplace-standards?language=en_US (last visited March 4, 2026). For the same reasons that I determined Defendants to be liable for violating the FLSA's minimum wage provision, I conclude that Defendants are liable for violating the CMWA's minimum wage provision. Conn. Gen. Stat. § 31-60.

## C.  <u>Damages</u>

If the Court determines that a plaintiff has alleged a cognizable cause of action and is entitled to a default judgment as a matter of law, it must next determine "the amount of the damages with reasonable certainty." *Credit Lyonnaise Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." *Id.* "[A] district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 191 (2d Cir. 2006). A court does not need to hold a hearing on damages if the court can "ensure that there is a basis for the damages specified." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

When a plaintiff's claims are largely identical or duplicative, courts award the larger of the FLSA or CMWA damages. *Tahirou v. New Horizon Enters., LLC*, 2023 WL 5934589, at *5 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No.

257 (D. Conn. Sept. 18, 2023) ("Because plaintiffs 'cannot recover under both statutes,' courts typically 'award damages pursuant to the statute that provides the greater amount of damages.'"); *Fuk Lin Pau v. Jian Le Chen*, 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) ("In this case, Defendant Chen has violated both federal and state law. But, because Plaintiff cannot recover under both statutes, the Court will award damages pursuant to the statute that provides the greater amount of damages.").

### 1. Actual Damages

Stewart's claims for actual damages encompass her unpaid wages and unpaid overtime wages. Section 31-71b(a)(1) of the Connecticut General Statutes obliges employers to "pay weekly, or once every two weeks, all wages, salary, or other compensation due each employee." Under both the FLSA and CMWA, an employee is entitled to one- and one-half times her regular rate of pay for hours worked over forty in a week. 29 U.S.C. § 207(a)(1); Conn. Gen. Stat. § 31-76c.

As an initial matter, I agree with Stewart that she is entitled to compensation for all 24 hours of the 24-hour shifts that she worked. During these shifts, Defendants required her to stay overnight at the client's residence and be ready and available to assist the clients at all times. ECF No. 1 ¶¶ 50–52. During the 24-hour shifts, Stewart did not receive regularly scheduled work-free uninterrupted periods to sleep or for meals, *id.* ¶¶ 57–59, and was not provided with adequate sleeping accommodations either. *Id.* ¶ 61. For these reasons, I am reasonably certain that Stewart was working during all 24 hours of her 24-hour shifts, and that, accordingly, she is due unpaid wages for all of them. *See Aboah v. Fairfield HealthCare Servs., Inc.,* 2024 WL 3552413, at *15 (D. Conn. July 26, 2024), *motion to certify appeal denied,* 2024 WL 5159161 (D. Conn. Dec. 18, 2024) ("Sleep, as a general matter, is considered 'work' for FLSA and CMWA purposes, if the employee is required to be on duty. If the employee is required to be on duty for twenty-four hours

or more, the employer and the employee may agree to exclude 'a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and employee can usually enjoy an uninterrupted night's sleep.' For purposes of the FLSA, the agreement may be either express or implied, and may, but need not be, in writing. If the employer and employee have an agreement to exclude sleep time but 'the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked.' If the employee 'cannot get at least 5 hours' of sleep' as a result of the interruption or interruptions, 'the entire scheduled [sleep] period is working time.' The CMWA sleep time provision is similar in material respects, except that the agreement to exclude sleep time from hours worked must be 'in writing.'") (internal citations omitted).

Stewart alleged that her work for Defendants occurred in April and May of 2024, *id.* ¶ 35, when she worked approximately 32 shifts for Defendants. *Id.* ¶ 44. Five or six of these shifts were 24-hour shifts, *id.* ¶ 41, and the rest were 12-hour shifts, though Stewart "often" had to work 13 or 14 hours during these shifts. *Id.* ¶ 40. Stewart worked the 12-hour shifts at a rate of approximately five to seven shifts a week. *Id.* Defendants told Stewart that she would be paid between $15 and $20 an hour for her work. *Id.* ¶ 42.

Based on Stewart's allegations and for the purposes of calculating damages, I will use a wage of $17.50 per hour as Stewart's regular rate of pay because it is the midpoint between the $15 to $20 wage she was promised, and is higher than the federal or Connecticut minimum wage, as discussed above.[2] I will use an overtime rate of $26.25 per hour for all hours worked over forty

---

[2] Courts considering motions for default judgment where the complaint brings CMWA unpaid wages claims; CMWA minimum wages claims; and FLSA minimum wages claims use the highest wage the plaintiff was owed between the promised wage, the Connecticut minimum wage, and the federal minimum wage. *See Hernandez v. Little K's Landscaping, LLC*, 2024 WL 1121321, at *8 (D. Conn. Feb. 5, 2024) *recommended ruling adopted in all respects except "recalculat[ing] unpaid wages slightly,"* No. 3:23-CV-00460 (SVN), ECF No. 27 (D. Conn. March 8, 2024) (using "agreed hourly rate of pay" of $25 per hour to

hours per week, which represents one and a half times Stewart's regular rate of pay. I will assume that she worked six scheduled 12-hour shifts per week, the midpoint of her estimate of five to seven of these shifts a week, and that two of those each week required her to work 13.5 hours, rather than 12 hours, because she often had to stay one to two hours late. I will assume that her work took place over five weeks, which roughly comports with Stewart's allegation that she worked 27 12-hour shifts (approximately 32 total shifts minus five 24-hour shifts) at a rate of six shifts per week. As these figures amount to a total of 35 shifts, rather than the 32 Stewart alleged in her complaint, I will subtract two 12-hour shifts and one 13.5-hour shift from the final week to bring the total shifts to 32. I also factor in the $400 she was already paid by Defendants. ECF No. 1 ¶ 45. Accordingly, I calculate damages as follows:

| Week | Hours from 24-hour shifts | Hours from 12-hour shifts | Hours from 13.5-hour shifts | Total hours worked | Regular wages due (first 40 hours *$17.50) | Overtime wages due ((Total hours worked – 40) *$26.25) |
|---|---|---|---|---|---|---|
| 1 | 24 | 48 | 27 | 99 | $700 | $1548.75 |
| 2 | 24 | 48 | 27 | 99 | $700 | $1548.75 |
| 3 | 24 | 48 | 27 | 99 | $700 | $1548.75 |
| 4 | 24 | 48 | 27 | 99 | $700 | $1548.75 |
| 5 | 24 | 24 | 13.5 | 61.5 | $700 | $564.375 |
| TOTAL EARNED | | | | | $3500 | $6,759.38 |
| TOTAL PAID | | | | | $400 | $0 |
| **TOTAL UNPAID WAGES** | | | | | **$3100** | **$6,759.38** |

Based on the foregoing analysis, I am reasonably certain that Stewart is entitled to $3,100 in unpaid regular wages and $6,759.38 in unpaid overtime wages for her work for Defendants. Accordingly, I find that Stewart is owed $9,859.38 in unpaid wages as actual damages.

---

calculate damages for first forty hours worked in each unpaid week, and $37.50 per hour for hours worked over forty hours each week).

2. *Liquidated Damages*

In addition to her actual damages, Stewart is also entitled to liquidated damages. The CMWA permits a plaintiff to recover liquidated damages in an amount equal to her unpaid wages. Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive ... such employee ... shall recover, in a civil action ... twice the full amount of such wages.").[3]

Awards of liquidated or double damages are not mandatory. The CMWA provides that an employer can escape an award of double damages "if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law." Conn. Gen. Stat. § 31-72; *see also* Conn. Gen. Stat. § 31-68(a)(2). If the employer seeks to avoid liquidated or double damages, however, it bears the burden to prove its good faith. *Morales v. Gourmet Heaven, Inc.*, 2016 WL 6996976, at *12 (D. Conn. Nov. 29, 2016) ("it is the Defendants who must prove good faith to avoid double damages").

Because it is the employer's burden to prove good faith to avoid double damages – not the employee's burden to prove bad faith – courts frequently award liquidated damages when the employer defaults. *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) ("As the Defendants have defaulted, they cannot make such a showing [of good faith]."); *Hernandez v. Little K's Landscaping, LLC*, 2024 WL 1121321, at *12 (D. Conn. Feb. 5, 2024), *recommended ruling adopted in all respects except "recalculat[ing] unpaid wages slightly,"* No. 3:23-CV-00460

---

[3] Because Stewart is entitled to only one set of liquidated damages, I use Connecticut's statutes. *See Hernandez v. Little K's Landscaping, LLC*, 2024 WL 1121321, at *14 (D. Conn. Feb. 5, 2024), *recommended ruling adopted in all respects except "recalculat[ing] unpaid wages slightly,"* No. 3:23-CV-00460 (SVN), ECF No. 27 (D. Conn. March 8, 2024) ("Connecticut wage-and-hour plaintiffs should recover liquidated damages under either the FLSA or the state statutes, but not both. In this case, the Plaintiffs' recovery is higher under the Connecticut statutes. Because plaintiffs are entitled to recover under the statute that provides the best recovery, I recommend that they be awarded double damages under the Connecticut statutes but not under the FLSA.") (internal citation omitted).

(SVN), ECF No. 27 (D. Conn. March 8, 2024) ("In short, the question of whether a plaintiff should recover one set of double damages against a defaulting defendant is usually not a hard one."); *Tahirou v. New Horizon Enters., LLC,* 2023 WL 5934589, at *7 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No. 257 (D. Conn. Sept. 18, 2023) ("I previously concluded that there was probable cause to believe that Mr. Tahirou would recover liquidated damages against New Horizon. Given New Horizon's default in this case, there is no reason to depart from this conclusion."). Above, I found that Stewart is owed $9,859.38 in unpaid wages. Accordingly, I award Stewart $9,859.38 in liquidated damages.

### 3. *Prejudgment Interest*

Stewart's motion for default judgment requests prejudgment interest at a rate of 12%. ECF No. 18-8 at 22. Courts may award a plaintiff prejudgment interest under the CMWA. *Modise v. Osagie*, 2024 WL 4170979, at *10 (D. Conn. Sept. 12, 2024) ("although the FLSA generally prohibits the award of both prejudgment interest and liquidated damages, the 'CMWA has no such limitation.'"); *Wei v. Sichuan Pepper, Inc*., 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom.,* 2022 WL 382019 (D. Conn. Feb. 7, 2022) ("The CMWA has no such limitation, however, and indeed courts in this district have awarded prejudgment interest in addition to liquidated damages under that statute.").

As to the rate of interest, courts in this district have awarded 10% or 12% yearly interest for awards of unpaid wages under the CMWA.  As explained by Judge Nagala, this is an unsettled area of law:

> There is competing authority on whether an award of 10% or 12% per annum is required for awards of unpaid wages under the CMWA. As Plaintiffs note in their motion, at least one court in this district has awarded 12% interest based on Conn. Gen. Stat. § 31-72, which authorizes civil actions for unpaid wages, and incorporates Conn. Gen. Stat. § 31-265, which provides for a minimum interest rate of 12%. However, as recently noted by another court in this district, '§ 31-72 mentions § 31-265 only in connection with collections by the Labor

Commissioner.'

*Modise v. Osagie*, 2024 WL 4170979, at *10 (D. Conn. Sept. 12, 2024) (internal citations omitted). In recent years, courts in this district have come out on both sides of this issue. *Id.* at *11 (awarding 12% annual interest rate because "the Labor Commissioner stands in the shoes of the employee [under Conn. Gen. Stat. § 31-72]…[so] an employee, too, may recover interest on his or her unpaid wages."); *Crocker v. Elite Energy Consulting, LLC*, 2024 WL 3595904, at *10 (D. Conn. July 31, 2024) (applying "the standard prejudgment interest provisions of [Conn. Gen. Stat.] § 37-3a to unpaid wage claims," which caps prejudgment interest at 10% because "no Connecticut appellate decision addresses whether § 31-265 applies to all actions under § 31-72 or only collection efforts by the Commissioner"); *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom.,* 2022 WL 382019 (D. Conn. Feb. 7, 2022) (recommending award of prejudgment interest at 10% rate under Conn. Gen. Stat. § 37-3a and noting that "other courts in this district have awarded ten percent in wage cases decided in roughly similar economic environments."); *Tahirou v. New Horizon Enters*., LLC, 2023 WL 5934589, at *8 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No. 257 (D. Conn. Sept. 18, 2023) (recommending that prejudgment interest be calculated at a rate of twelve percent under Conn. Gen. Stat. §§ 31-72, 31-265).

In the absence of Connecticut Appellate or Supreme Court authority on this issue, I find that Conn. Gen. Stat. § 37-3a applies here, which caps prejudgment interest at 10%. Although Conn. Gen. Stat. § 31-72 incorporates § 31-265, which provides for a minimum interest rate of 12%, it does so only for actions brought by the Labor Commissioner.  Conn. Gen. Stat. § 31-72 ("The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance

with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner."). The Labor Commissioner's authority to collect interest appears in the same provision that authorizes the employee to collect "twice the full amount of wages" but not interest. Conn. Gen. Stat. § 31-72. This contrast suggests that the General Assembly's omission of interest from the arsenal of remedies it gave employees was deliberate. I conclude that the plain text of Section 31-72 demonstrates that the legislature deliberately declined to give private plaintiffs a specific interest remedy, and therefore I will award Stewart prejudgment interest under the general prejudgment interest statute, Conn. Gen. Stat. § 37-3a, which provides for prejudgment interest at a rate of up to 10%.

I select the interest rate of 10% based on Defendants' willful conduct in failing to pay Stewart the wages she was owed, which Defendants have admitted by defaulting. ECF No. 1 ¶¶ 26, 87, 93, 101, 111, 118 (alleging Defendants willfully failed to pay wages owed). *See Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom. Wei v. Sichuan Pepper*, 2022 WL 382019 (D. Conn. Feb. 7, 2022) (awarding prejudgment interest at rate of 10% in CMWA case, in part because "defaulting defendants are ordinarily deemed to have admitted allegations of willfulness"); *accord Garnet Analytics, Inc. v. Diversified Sols., Inc*., 2013 WL 6511940, at *8 (D. Conn. Dec. 12, 2013) (awarding prejudgment interest at rate of 10% per year because the "defendants' detention of the money was wrongful on the basis that their conduct was willful and fraudulent").

"Calculating prejudgment interest in wage cases can be complicated because each weekly paycheck arguably requires its own interest calculation. To avoid these difficulties, courts often employ the expedient of calculating interest on the entire sum from the midpoint of the relevant date range to the date that judgment will likely enter." *Tahirou v. New Horizon Enters., LLC*, 2023

WL 5934589, at *8 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No. 257 (D. Conn. Sept. 18, 2023); *Modise v. Osagie*, 2024 WL 4170979, at *11 (D. Conn. Sept. 12, 2024) ("The Court will exercise its discretion to adopt Plaintiffs' proposed midpoint of their employment for purposes of starting date of the interest calculation"); *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom.,* 2022 WL 382019 (D. Conn. Feb. 7, 2022) ("I therefore recommend that the Plaintiffs be awarded pre-judgment interest, running from the midpoint of each Plaintiff's term of employment to the date of the judgment."). Therefore, I will calculate the midpoint of Stewart's employment as May 1, 2024 based on her allegation that she worked for Defendants in April and May of 2024. ECF No. 1 ¶ 35. Taking all the foregoing calculations together, I calculate Stewart's total damages and per diem interest as follows[4]:

| Actual damages (unpaid wages due) | Liquidated damages | Total damages (actual + liquidated) | Annual interest (total damages * 10%) | Daily interest (annual interest /365) | **Total interest** (daily interest * 679) |
|---|---|---|---|---|---|
| $9,859.38 | $9,859.38 | $19,718.76 | $1,971.88 | $5.40 | **$3,666.60** |

I calculate 679 days between May 1, 2024 and the date of this ruling. That number multiplied by the daily interest is $3,666.60.

### 4. *Attorneys' Fees and Costs*

Lastly, Stewart also seeks attorneys' fees and costs. Under both the FLSA and the CMWA, successful plaintiffs can recover "reasonable" attorneys' fees. 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68, 31-72. In the case of the FLSA, an award of reasonable attorneys' fees is mandatory. 29 U.S.C. § 216(b) ("The court ... *shall* ... allow a reasonable attorney's fee....") (emphasis added);

---

[4] *Modise v. Osagie*, 2024 WL 4170979, at *11 (D. Conn. Sept. 12, 2024) (calculating damages using similar formula); *Tahirou v. New Horizon Enters., LLC*, 2023 WL 5934589, at *8 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No. 257 (D. Conn. Sept. 18, 2023) (same); *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *15 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom.,* 2022 WL 382019 (D. Conn. Feb. 7, 2022)  (same).

*Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 & n.5 (1978) (citing the FLSA as a statute that "make[s] fee awards mandatory for prevailing plaintiffs"). The CMWA provides that a successful plaintiff "shall" recover "such reasonable attorneys' fees as may be allowed by the court." Conn. Gen. Stat. § 31-68(a).

In the Second Circuit, an analysis of the reasonableness of a fee request must begin with a "lodestar" calculation. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id.* The lodestar creates a "presumptively reasonable fee." *Id.* ("While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error."). I will therefore begin my analysis of Stewart's fee request by first considering the reasonableness of her attorneys' claimed hourly rates, and then I will consider whether the requested hours are appropriate.

a)   Reasonable Rates

Stewarts' attorneys claim hourly rates of $400 an hour for the work of a law firm partner; $275 an hour for the work of an associate; $175 an hour for the work of data entry associates; and $125 an hour for the work of paralegals. ECF No. 18-8 at 27–28. These rates are reasonable in the context of wage and hour cases in this district. *See Bi v. Xia*, 2024 WL 306693, at *4 (D. Conn. Jan. 3, 2024), *aff'd,* 2025 WL 1733682 (2d Cir. June 23, 2025) (in FLSA case, awarding $375 per hour for lead attorney and $150-$175 per hour for law clerk and paralegal); *Magar v. Tika Indian Rest. LLC*, 2025 WL 1381876, at *3 (D. Conn. May 13, 2025) (in FLSA case, approving $400 per hour rate for experienced practitioners; $150-225 per hour for associate attorneys); *Lliguicota v. Diamond Nail Salon, LLC.*, 2024 WL 63219, at *3-4 (D. Conn. Jan. 5, 2024) (in FLSA case, awarding partner rate of $400 per hour; associates rates of $225 and $200 per hour; and managing

clerk/paralegal rate of $140 per hour); *Aboah v. Fairfield Healthcare Servs., Inc.*, 2023 WL 8807362, at *3 (D. Conn. Dec. 20, 2023) (approving $400 per hour for "partner-level work in FLSA cases"; $225 per hour for associate-level attorneys; and $140 per hour for paralegal services). Accordingly, I will award Stewarts' counsel attorneys' fees at the rate of $400 an hour for the work of a law firm partner; $275 an hour for the work of associates; $175 an hour for the work of data entry associates; and $125 an hour for the work of paralegals and other staff.

      b)  Reasonable Hours

Stewart's attorneys spent a total of 63.00 hours on this case, and she requests fees for all their time. ECF No. 18-8 at 27. The majority of that time was billed by the law firm partner working on the case, Alanna R. Sakovits ("Sakovits"), who spent 41.20 hours on the matter. *Id.*

Courts have reduced attorneys' fee claims when the claimant did not adequately "demonstrate the reasonableness of the distribution of the work between partners, associates and paralegals…the most experienced attorney with the highest billable rate…should not have been the one to perform the majority of the work…In a relatively straightforward wage and hour case, staffing the case in such a matter warrants an across-the-board adjustment in the number of hours billed." *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *20 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom.,* 2022 WL 382019 (D. Conn. Feb. 7, 2022) (internal quotation marks and alterations omitted).

Here, the time entries submitted by Stewart's counsel indicate that an across-the-board adjustment in the number of hours billed is reasonable. The time entries reflect that Sakovits, the most experienced attorney with the highest billable rate on the matter, herself drafted the documents and conducted the legal research for the case, including on straightforward issues that could have been handled by a junior lawyer. ECF No. 18-7 at 1–3 (Sakovits's entries for "Legal

research re employer"; "Draft complaint"; "Performed legal research re entity and individual to serve"; "Attention to service and research same"; "Performed legal research re service of process"; "Legal research re home health aide state laws in CT"; "Performed legal research re home health aide laws in CT"; "Legal research re default"; "Legal research re default process"; "Legal research re default judgment"; "Legal research re time to move for default"; "Draft request for entry to default; attention to research re same"; "Legal research re CMWA and FLSA for motion for default"; "Draft motion for default"; "Legal research re motion for default"; "Draft declaration"; "Draft motion for default"; "Legal research re attorneys' fees"; "Draft motion for default"; "Legal research re damages."). Therefore, I cannot conclude that the time spent was entirely reasonable. I will impose an across-the-board reduction of 25% to the attorneys' fees sought for the work performed by Sakovits. *Accord Tlacoapa v. Carregal,* 386 F. Supp. 2d 362, 371–72 (S.D.N.Y. 2005) (reducing hours billed by 35% in part because the legal research "could easily have been performed by Ms. Bernstein," who the court described as "a junior attorney with limited experience"); *Singh v. Meadow Hill Mobile Inc.*, 2021 WL 4312673, at *18 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted,* 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021) ("Accordingly, to account for the failure to delegate tasks to a more junior attorney, the billing of attorney hours for clerical and/or paralegal tasks, and excessive time spent on certain tasks, the Court will employ an across-the-board reduction in the number of hours billed by John Troy of 40 percent.").

 Accordingly, I calculate reasonable attorneys' fees as follows:

| Timekeeper | Timekeeper rate category | Reasonable rate | Claimed hours | Percentage reduction | Reasonable hours | Reasonable fee |
|---|---|---|---|---|---|---|
| Alanna Sakovits | Partner, *see* ECF No. 18-8 at 27 | $400 | 41.20 | 25% | 30.9 | $12,360 |

| Paige Piazza | Associate, *see id.* at 28 | $275 | 10.00 | 0% | 10.00 | $2,750 |
| Albina Zakharkina | Data entry associate, *see id.* | $175 | 7.70 | 0% | 7.70 | $1,347.50 |
| Ana Valerio | Paralegal, *see id.* | $125 | 2.90 | 0% | 2.90 | $362.50 |
| Irayda Perez | Data entry associate, *see id.* | $175 | 1.00 | 0% | 1.00 | $175 |
| Iwona Ner | Paralegal, *see id.* | $125 | 0.20 | 0% | 0.20 | $25 |
| **TOTAL** | | | | | | **$17,020** |

Stewart seeks costs in the amount of $504.28 related to her filing fee for the complaint ($405, *see* ECF No. 1), service of process, postage, and legal research fees. ECF Nos. 18-8 at 29; 18-7 at 3. A court may award reimbursement of "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). I find these expenses reasonable and will award Stewart $504.28 in costs. Accordingly, Stewart's reasonable attorneys' fees and costs amount to $17,524.28.

### 5.  *Total Damages*

Based on the foregoing, Stewart is awarded:

$19,718.76 in total damages;

$3,666.60 in prejudgment interest; and

$17,524.28 in attorneys' fees and costs.

## IV.    CONCLUSION

For the reasons stated above, Stewart's motion for default judgment is GRANTED. The Clerk is directed to enter judgment against Defendants for all claims in the amount of $40,909.64, jointly and severally and then close the case.

Stewart shall serve a copy of this Order on Defendants, and within 21 days of this Order,

file proof that she has done so.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       March 11, 2026